UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| SAMANTHA DOUP, on behalf of herself and others similarly situated, | : <br> : CIVIL ACTION FILE NO. |
| Plaintiff, | : <br> : |
| v. | : **COMPLAINT – CLASS ACTION** <br> : |
| BERKSHIRE HATHAWAY AUTOMOTIVE, INC. | : <br> : **JURY TRIAL DEMANDED** <br> : |
| Defendant. | : |

Plaintiff Samantha Doup (hereinafter referred to as "Plaintiff" or "Ms. Doup"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief, as follows:

## PRELIMINARY STATEMENT

1. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

2.      Ms. Doup brings this action under the TCPA alleging that Defendant Berkshire Hathaway Automotive, Inc. ("Defendant") made telemarketing robocalls to her residential telephone number that is registered on the National Do Not Call List (hereafter "NDNC"), which is a violation of the TCPA.

3.      Defendant never should have placed the calls to Ms. Doup in the first place. However, Defendant placed calls to Ms. Doup and then continued to call her despite requests that the calls cease.

4.      Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Ms. Doup sues on behalf of a proposed nationwide class of other persons who received similar calls.

5.      A class action is the best and most effective means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## NATURE OF ACTION

### The Telephone Consumer Protection Act

6.      As far back as 2012, the Pew Research Center reported 69 percent of cellular users who use text messaging receive unwanted text message spam, with 25 percent of them receiving it on a weekly basis. Jan Lauren Boyles and Lee Rainie, *Mobile Phone Problems*, Pew Research Center (Aug. 2, 2012), http://www.pewinternet.org/2012/08/02/mobile-phone-problems.

7. Robocalls, including automated calls have only increased since the 2012 study. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC Chairman).

8. "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991, Notice of Proposed Rulemaking*, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016), *available at* https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

## PARTIES

9. Plaintiff Samantha Doup is, and at all times mentioned herein was, an individual citizen of Texas and resident of this District.

10. Defendant Berkshire Hathaway Automotive, Inc. is a Delaware corporation with its principal place of business in Irving, Texas.

## JURISDICTION AND VENUE

11. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

12. This Court has personal specific jurisdiction over Defendant because it is a resident of this District and made calls to individuals in this District.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because the telemarketing calls that are the subject of this putative class action lawsuit were made into this District to consumers living in this District and from a resident of this District.

## TCPA BACKGROUND

The TCPA Prohibits Unsolicited Telemarketing Robocalls to Cell Phones

14. In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

15. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2] As recognized by the Federal Communications Commission ("FCC") and the Courts, a text message is a call under the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009).

16. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §§ 201 *et seq.*

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

[3] *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014 (2003).

17. Companies widely use a bulk advertising method involving "Short Message Services" (or "SMS"), which is a system that allows for transmission and receipt of short text messages to and from wireless telephones.

18. SMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless telephones are carried on their owner's person, SMS text message are received virtually anywhere in the world.

19. Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

20. Moreover, the transmission of an unsolicited SMS text message to a cellular device is distracting and aggravating to the recipient; intrudes upon the recipient's seclusion; wastes a quantifiable amount of available data on the recipient's cellular device, thereby reducing its data storage capacity; temporarily reduces the available computing power and application processing speed on the recipient's device; diminishes the available battery power which shortens the battery life; and requires expending a quantifiable amount of energy (electricity) to recoup the battery power lost as a result of receiving such a message.

21. As of October 16, 2013, express written consent is required to make any such telemarketing calls of text messages to the telephones of consumer. The express written consent must be signed and be sufficient to show the consumer received clear and conspicuous disclosure

of the significance of providing consent and must further unambiguously agree to receive future phone calls.[4]

22. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute.

23. On July 10, 2015, the FCC released a Declaratory Ruling which clarified that a consumer who had previously provided "express consent" to receive automated calls or text messages has a right to revoke such consent. Under the Declaratory Ruling, consumers can revoke consent using any reasonable method, including orally or in writing, that clearly expresses his or her desire not to receive further calls.   However, even before the release of the FCC Order finding that consent to receive a text message could be revoked, the Mobile Marketing Association declared in October 2012 in its *U.S. Consumer Best Practices for Messaging* that "[a] subscriber must be able to stop participating and receiving messages from any program by sending STOP to the short code used for that program . . ." and ". . . if the subscriber sent STOP or STOP ALL to the short code, they are opted out of all programs they were enrolled in on that short code. Moreover, the 2015 FCC Order regarding revocation of consent was upheld by the D.C. Circuit. *See ACA Int'l v. Fed. Commc'ns Comm'n*, No. 15-1211, 2018 WL 1352922, at *1 (D.C. Cir. Mar. 16, 2018) ("We uphold the Commission's approach to revocation of consent, under which a party may revoke her consent through any reasonable means clearly expressing a desire to receive no further messages from the caller.")

---

[4] *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 ¶ 33 (Feb. 15, 2012); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009).

### The National Do Not Call Registry

24. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

25. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

26. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

27. The Defendant is a "person" as the term is defined by 47 U.S.C. § 153(39).

28. Defendant is a car dealership group with 85 dealerships and 100 automotive franchises, making Defendant one of the 10 largest automotive dealership groups in the U.S.

29. Defendant manages marketing and telemarketing for its dealerships from a centralized marketing and communication office located in Coppell, Texas.

### Calls to Plaintiff

30. Ms. Doup has never sought out or solicited information regarding the services of Berkshire Hathaway and has not previously supplied her number to Defendant for any reason, and certainly not so Defendant could send her commercial advertising solicitations via robocalls.

31. Ms. Doup's telephone number, XXX-XXX-7855, is a residential, non-commercial telephone number.

32. Ms. Doup's telephone number is not associated with any business.

33. On April 2, 2005, Ms. Doup registered her telephone number with the National Do Not Call Registry.

34. Ms. Doup has received several telemarketing calls promoting the services of Defendant after registering her number on the National Do Not Call Registry.

35. Two such calls occurred on September 15, 2019.

36. The Defendant sent two text messages to the Plaintiff:



37. The calls were intended to advertise Defendant's automotive goods and services.

38. As can be seen from the text message, Ms. Doup was not interested and informed the Defendant as much.

39. However, the Defendant continued to contact Ms. Doup.

40. Defendant sent her a text message of similar content despite her response of "no".

41. In reply to that text message, she said "stop".

42. Despite her request, Ms. Doup received multiple telemarketing calls regarding an Acura automobile the Defendant was trying to sell her.

43. Ms. Doup even took the affirmative step of contacting Defendant on September 16, 2019 in an attempt to stop the unwanted calls.

44. During that call, Ms. Doup asked the Defendant to no longer contact her and explained she was never interested in any of their vehicles.

45. Despite this call on September 16, 2019, Ms. Doup continued to receive more calls in September of 2019.

46. Ms. Doup was not the only individual who complained of receiving such telemarketing calls from Defendant's automotive group.

47. A Mr. Frank Hegar made repeated complaints to the Public Utility Commission of Texas regarding the Defendant's telemarketing conduct.

48. These complaints included the following statements:

**Complaint Against:** Vandergriff Hyundai  
**Service Phone:** (972) 268-4028  
**Complaint Type:** Telephone Solicitation/ADAD  
**Account No:**  
**Complaint Information:** Called me multiple times this month even though I've been told them to remove me from the list and that I was on the do not dial list. I have been reporting calls to FCC as well but that hasn't resolved anything. Has been going on for years now.

**Complaint Information:** Second complaint submitted for this same company through the PUC. Have been put on their internal "do not call list" multiple times over the past few months but will not stop calling me. Have not done business with them since ~October 2014 so they should no longer be calling me. Will continue to submit reports every time they contact me

49. Additionally, a Mr. Morgan Patterson made a complaint to the Public Utility Commission of Texas regarding the Defendant's telemarketing conduct:

**Complaint Against:** Vandergriff Honda  
**Service Phone:**  
**Complaint Type:** Solicit - No Call  
**Account No:**  
**Complaint Information:** I bought a car from Vandergriff Honda in February 2014.  
I receive multiple calls a week asking me to upgrade my car.  
I have spoke to several people at the dealership and asked them to stop calling with no luck. Vandergriff Honda has called me for the past 2+ years on a weekly basis.

50. The calls received by Ms. Doup and others were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as it seeks to have her sign up and enter into a contract for the services of the Defendant. This message therefore qualified as telemarketing. 47 C.F.R. § 64.1200(f)(12).

51. The calls were not necessitated by an emergency.

52. Plaintiff and all members of the Class, defined below, have been harmed by Defendant's acts because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. Plaintiff and the Class Members were also harmed by the cell phone battery use that resulted from the calls and the intrusion on their cellular telephone that prevented Class Members from receiving legitimate communications during the same time.

## CLASS ACTION ALLEGATIONS

53. Plaintiff brings this action on behalf of herself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23.

54. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **National Do Not Call Registry Class**: All persons in the United States (1) whose telephone numbers were on the National Do Not Call Registry; (2) but who received more than one telephone solicitation telemarketing call or text message; (3) from or on behalf of Defendant; (4) within a 12-month period within four years prior to the commencement of this litigation until the class is certified.

55. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Class as she has no interests that conflict with any of the class members' interests.

56. Excluded from the Class is counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

57. Plaintiff and all Class members have been harmed by Defendant's acts, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their cell phone battery and data, and the intrusion on their cellular telephone that prevented it from receiving legitimate communications.

58. This Class Action Complaint seeks injunctive relief and money damages.

59. The Class defined above is identifiable through the Defendant's dialer records, other phone records, and phone number databases.

60. Plaintiff does not know the exact number of Class members, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

61. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

62. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

63. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

64. There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

(a) whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

(b) whether Defendant made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

(c) whether Defendant's conduct constitutes a violation of the TCPA; and

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

65. Further, Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests which are antagonistic to any member of the Class.

66. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so.

67. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

68. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

69. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(d))
### on behalf of the National Do Not Call Registry Class

70. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

71. The Defendant violated the TCPA and the Regulations by making, or having its agent make, two or more telemarketing automated calls within a 12-month period to Plaintiff and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

72. As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

73. Plaintiff and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting the Defendant from advertising its goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

74. The Defendant's violations were knowing or willful.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Injunctive relief prohibiting Defendant from calling telephone numbers, advertising its goods or services, except for emergency purposes, to any number on the National Do Not Call Registry.

B. As a result of the Defendant's willful and/or knowing violations of 47 C.F.R. § 64.1200(d), Plaintiff seeks for herself and each member of the National Do Not Call Registry Class treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing a Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: September 1, 2020   */s/ Charles E. Soechting, Jr.*
Charles E. Soechting, Jr.
Simon Greenstone Panatier
1201 Elm Street, Suite 3400
Dallas, TX 75270
214-276-7680
csoechting@sgpblaw.com

J. Gerard Stranch, IV (*pro hac vice* forthcoming)
Joe P. Leniski, Jr. (*pro hac vice* forthcoming)
Branstetter, Stranch & Jennings, PLLC
223 Rosa L. Parks Avenue, Ste. 200
Nashville, TN 37203
(615) 254-8801
gerards@bsjfirm.com
joeyl@bsjfirm.com

Anthony I. Paronich (*pro hac vice* application forthcoming)
PARONICH LAW, P.C.
350 Lincoln St., Suite 2400
Hingham, MA 02043
617-485-0018
anthony@paronichlaw.com

*Attorneys for Plaintiff and proposed class*